UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MOON,
a/k/a AZELIE DELAINA MOON,

Plaintiff,

v.

ALLAN COOPER, *et al.*,

Defendants.
______________________________/

Civil Action No. 25-12519

Jonathan J.C. Grey
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 28)**

On August 13, 2025, plaintiff David Moon, a/k/a Azelie Delaina Moon ("Moon"), an incarcerated person, filed her[1] *pro se* civil rights complaint under 42 U.S.C. §§ 1983 and 1985, the Elliott-Larsen Civil Rights Act ("ELCRA"), Title II of the Americans with Disabilities Act ("ADA"), and the Michigan Constitution.[2] (ECF No. 1). At the time of the events at issue in this lawsuit, Moon was incarcerated at the Saginaw Correctional Facility ("SRF") in Freeland, Michigan. (*Id.*, PageID.2). Named as defendants in this action are eight current or former employees of the Michigan Department of Corrections ("MDOC"): Corrections Officer ("CO") Allan Cooper, Grievance Coordinator ("GC") Joseph Vellanti, Warden Adam Douglas, Deputy Warden ("DW") Melissa Godfrey, Assistant Deputy Wardens ("ADW") Ronald Fenner and Michael Guerin, and Inspectors

[1] In her complaint, Moon indicates that she is a gender dysphoric intersex woman. (ECF No. 1, PageID.2). The Court will use her preferred pronouns of she/her/hers.

[2] Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 12).

Larry Ferns and Michael Schaaf (collectively, "Defendants"). (*Id.*, PageID.6-7).

Now before the Court is Defendants' Motion to Dismiss which was filed on December 16, 2025. (ECF No. 28). Moon filed a response to this motion on December 30, 2025 (ECF No. 33), and Defendants filed a reply on January 22, 2026 (ECF No. 36).[3]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 23)** be **DENIED**.

## II. REPORT

### A. Moon's Allegations

In her complaint, Moon alleges that, on July 16, 2025, in retaliation for a grievance she had filed against CO Cooper for denying her access to her dental treatment and law library callout, CO Cooper walked into the shower bay and stared at her, making her feel "violated, objectified, and humiliated." (ECF No. 1, PageID.2, 10). Moon alleges that she "quickly covered her breasts and objected to Cooper's actions." (*Id.*, PageID.10).

[3] On February 10, 2026, Moon filed a Motion Requesting Leave to File Sur-Reply (ECF No. 37), to which Defendants responded on February 19, 2026 (ECF No. 38). Because the Court need not consider the arguments raised in Moon's proposed sur-reply to resolve the instant motion, **IT IS ORDERED** that her Motion Requesting Leave to File Sur-Reply **(ECF No. 37)** is **DENIED AS MOOT**.

According to Moon, CO Cooper then locked her in the shower bay with two other prisoners and then "released male prisoners to roam" the shower area. (*Id.*). Moon further alleges that, "[i]mmediately following this act of sexual abuse [she] became panicked and hypervigilant" and discovered a camera in the dressing area, which allowed direct viewing into the shower bay. (*Id.*, PageID.11). Moon alleges that Warden Douglas, DW Godfrey, and ADWs Fenner and Guerin are "responsible for the installation and the maintenance and use of this Voyeuristic Video Camera" and that footage from the device is used to identify gender dysphoric prisoners and incite violence against them. (*Id.*, PageID.13, 16).

Moon further alleges that, "due to the obfuscatory nature" in which staff had responded to prior complaints she had filed under the Prison Rape Elimination Act ("PREA") that were "not written on a grievance form," she wrote a grievance concerning sexual abuse and submitted it to GC Vellanti. (*Id.*, PageID.11). Moon asserts that GC Vellanti and Inspectors Ferns and Schaaf had a "responsibility to fairly and justly investigate [her] claims," but that they "instead conspired to cover up their co-workers' illegal actions by failing to provide [her] any Investigation Number and also fail[ing] to address [her] complaints whatsoever." (*Id.*, PageID.11-12). According to Moon, on July 21, 2025, once she realized that "she was not going to be taken seriously or interviewed concerning her complaints [about] the PREA violations," she wrote an informal complaint to the PREA Coordinator. (*Id.*, PageID.12, 27). Sixteen days later, on August 6, 2025, Moon filed the instant complaint.[4]

---

[4] Under the prison "mailbox rule," *pro se* prisoner civil right lawsuits are considered "filed" on the

Defendants now move to dismiss Moon's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that, prior to filing this lawsuit, Moon failed to properly exhaust her administrative remedies. (ECF No. 28).

**B. Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions.

---

date the complaint is signed and deposited in the prison mail system. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008); *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004).

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**C. Analysis**

In their motion, Defendants argue that Moon failed to properly exhaust her administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 28). Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge her conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the

agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.[5] *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009). In determining whether a plaintiff has properly exhausted her claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. As explained further herein, within the MDOC, different types of grievances must be exhausted in different ways to some extent. Thus, an understanding of the relevant MDOC grievance policies is important.

*1. The Relevant Policies*

*a. The MDOC's "General" Grievance Policy*

In Michigan's correctional facilities, prisoner grievances generally are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "General Grievance Policy"). (ECF No. 28-2). A prisoner must first complete the process outlined

[5] Somewhat atypically in the failure-to-exhaust context, Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), rather than a motion for summary judgment pursuant to Fed. R. Civ. P. 56. According to Defendants, "The Sixth Circuit has explained, 'it is beyond doubt … that a district court may base a motion to dismiss on an affirmative defense.'" (ECF No. 28, PageID.106) (quoting *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 317 (6th Cir. 2021)). Specifically, Defendants argue that a motion to dismiss can be premised on an affirmative defense "'if the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" (*Id.*) (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554-55 (6th Cir. 2012)).

in the General Grievance Policy – including pursuing a grievance through "all three steps of the grievance process" – before she can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The General Grievance Policy provides that if a prisoner cannot resolve her dispute with the staff member involved, she has five business days to file a Step I grievance. (*Id*. at ¶¶ W, CC). If the prisoner is dissatisfied with the Step I response, she may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ JJ). If the grievant is dissatisfied with, or does not receive, a Step II response, she has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ NN). Again, an inmate may only pursue a claim in court if she has complied with her obligations at each of these three steps. (*Id.* at ¶ C).

*b. The MDOC's PREA Policy*

MDOC Policy Directive 03.03.140, entitled "Sexual Abuse and Sexual Harassment of Prisoners – Prison Rape Elimination Act (PREA)" (the "PREA Policy"), prohibits sexual contact among and with prisoners, as well as sexual abuse and harassment committed by staff against prisoners. (ECF No. 28-3). The PREA Policy defines sexual abuse of a prisoner by an employee broadly, and it includes "Voyeurism by an employee." (*Id.* at ¶ S)(8)). "Voyeurism" is further defined as "[a]n invasion of privacy of a prisoner by an employee for reasons unrelated to official duties, such as peering at a prisoner who is using a toilet in their cell to perform bodily functions; requiring a prisoner to expose their buttocks, genitals, or breasts; or taking images of all or part of a prisoner's naked body or of a prisoner performing bodily functions." (*Id.* at ¶ N).

The PREA Policy further sets forth the process for prisoners to report prohibited conduct. (*Id.* at ¶¶ TT-XX). Specifically, prisoners may report prohibited sexual conduct verbally or in writing "in any manner," including (1) privately to appropriate supervisory employees; (2) through the MDOC Sexual Abuse Hotline; (3) by completing the Sexual Abuse/Sexual Harassment Complaint form on the MDOC website; (4) by contacting the PREA Manager; (5) by contacting the Internal Affairs Section; (6) through an external reporting agency; or (7) anonymously. (*Id.* at ¶ UU). While the MDOC "has eliminated the administrative grievance procedure for addressing prisoner grievances regarding sexual abuse," the PREA Policy states that prisoners may utilize the General Grievance Policy "to report allegations of sexual harassment or retaliation." (*Id.* at ¶¶, VV, WW). However:

> If prisoners utilize the [General Grievance Policy] to report an allegation of sexual abuse, the facility Grievance Coordinator shall forward the sexual abuse allegation to the facility PREA Coordinator for further handling in accordance with this [PREA Policy], and the sexual abuse grievance shall be removed from the grievance process. The prisoner shall be notified in writing that this has occurred.

(*Id.* at ¶ VV). Relatedly, the General Grievance Policy provides:

> Grievances filed regarding sexual abuse, including those filed by a third party, shall not be processed as grievances under this policy but shall be reported in accordance with [the PREA Policy]. Any grievance submitted under this policy that contains an allegation of sexual abuse shall be copied by the Grievance Coordinator and forwarded to the PREA Coordinator for investigative referral if warranted. The original grievance shall be returned to the prisoner. If the grievance also includes a non-PREA grievable issue, it will need to be refiled by the prisoner on the appropriate Prisoner/Parolee Grievance form.

(ECF No. 28-2 at ¶ D).

Regardless of the manner in which an alleged PREA violation is reported, claims of

sexual abuse, sexual harassment, and overfamiliarity by an employee must be logged into a database, and all such claims "shall be referred for investigation," as set forth in PD 02.03.100 ("Employee Discipline") or PD 01.01.140 ("Internal Affairs"). (ECF No. 28-3 at ¶¶ RR, XX, EEE, III). Pursuant to PD 01.01.140, all internal affairs investigations must be completed and closed within 60 calendar days. (ECF No. 28-4 at ¶ O).

*2. Defendants' Exhaustion Arguments are Without Merit*

In their motion, Defendants argue that the Court should dismiss Moon's complaint "because her allegations demonstrate that she did not exhaust administrative remedies before filing this lawsuit." (ECF No. 28, PageID.106). Specifically, Defendants assert

> Here, the incidents which give rise to Moon's claims allegedly occurred on July 16, 2025 (ECF No. 1, PageID.9-10), and she filed this lawsuit on August 6, 2025 (*id.*, PageID.20) – i.e., 21 days later. Moon's allegations establishes (sic) the failure-to-exhaust affirmative defense because it is inconceivable that she could have exhausted her administrative remedies within three weeks under either the three-step [General Grievance Policy] or the [PREA Policy].

(*Id.*, PageID.108). There are two problems with Defendants' argument.

First, to the extent Defendants argue that any "grievable" claims (*i.e.*, non-PREA-related claims) are not properly exhausted under the General Grievance Policy, such an argument is without merit. Moon attached to her complaint a copy of the grievance she filed against CO Cooper on a "Prisoner/Parolee Grievance Form" on July 16, 2025 (ECF No. 1, PageID.24), as well as a memorandum she received from GC Vellanti on July 18, 2025, indicating that because her grievance concerned allegations of sexual abuse, it was being returned to her and would "not be processed" as a grievance under the General Grievance Policy (*id.*, PageID.25). Moon was specifically advised by GC Vellanti that "[a]

copy of the grievance [was] being forwarded to the PREA coordinator for further review." (*Id.*). Thus, Defendants cannot now argue that Moon failed to exhaust any claims under the General Grievance Policy when she was specifically advised that that process was not available to her. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (inmate must exhaust available remedies but need not exhaust unavailable ones).

Second, the Court turns to the crux of Defendants' argument, which is that "[a]ssuming, but not conceding, that Moon reported her allegations of PREA misconduct, the MDOC had at least 60 calendar days to investigate, complete, and close the investigation." (ECF No. 1, PageID.109) (citing ECF No. 28-4). Defendants argue, then, that, "There is therefore no basis for Moon to believe that, by August 6, 2025, her PREA claims were not being investigated or that the investigation into her PREA claims had concluded. In short, Moon's complaint allegations establish that she could not have exhausted any claims under the PREA reporting process set forth in [the PREA Policy]." (*Id.*). Viewing the complaint and its attachments in the light most favorable to Moon, as the Court must do at the motion to dismiss stage, the Court is not persuaded by Defendants' argument.

As an initial matter, Defendants' argument rests on a flawed premise – namely, that the investigation of a PREA complaint had to be "completed and closed within 60 calendar days." (ECF No. 28-4 at ¶ O). This 60-day requirement is contained within the Internal Affairs Policy, not the PREA Policy. And, while the PREA Policy does provide that all "allegations of employee sexual abuse/sexual harassment" shall be referred to Internal Affairs for investigation (ECF No. 28-3 at ¶ III), and the Internal Affairs Policy provides

that such investigations must be completed within 60 days (ECF No. 28-4 at ¶ O), these ostensibly intertwined provisions do not impose any deadlines on the *prisoner filing the PREA complaint*.

As this Court recently explained in a very similar case:

> [The PREA Policy] "eliminated the administrative grievance procedure for addressing prisoner grievances regarding sexual abuse." The policy states, "*If* prisoners utilize the prisoner grievance system to report an allegation of sexual abuse, the facility Grievance Coordinator shall forward the sexual abuse [grievance] to the facility PREA Coordinator for further handling." Thus, [the PREA Policy] permits, but does not require, a prisoner to use the normal grievance process to report sexual abuse. In the same vein, [the PREA Policy] says that a prisoner "*may* utilize the prisoner grievance system ... to report allegations of sexual harassment or retaliation."
>
> The current version of the [General Grievance Policy] also eliminated the requirement that prisoners exhaust complaints about sexual abuse through its three-step process. And prisoners may exhaust claims of retaliation for filing other PREA grievances by following [the PREA Policy].
>
> * * *
>
> … had defendants argued that Henry failed to exhaust his grievances under [the PREA Policy], that argument would have lacked merit. The reporting procedure under [the PREA Policy] is "so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." In 2019, the Sixth Circuit found that the "MDOC PREA grievance process is, in practice, filled with contradictions and machinations, and these contradictions and machinations render the process incapable of use." Though MDOC has amended its PREA policy, mystery about how to exhaust a PREA claim remains.
>
> That mystery remains because the current version of [the PREA Policy] lacks strict requirements for making PREA claims. Prisoners have many choices for reporting prohibited conduct "verbally or in writing regardless of when the incident was alleged to have occurred." The policy requires no specific form for reporting …. And the policy

> describes no requirement or method for prison officials to provide written notice to a prisoner about the handling of a PREA claim except that prisoners must be notified in writing if an administrative grievance alleging sexual abuse is removed from the grievance process for handling by the PREA Coordinator. Otherwise, the only indication that an alleged victim would be notified that a PREA investigation had begun is a requirement that an investigator interview the alleged victim or complainant, the alleged perpetrator, and alleged witnesses.[6]
>
> If allegations of sexual abuse or harassment are substantiated, the facility must notify the victim of any related charges or convictions. And a prisoner who has reported sexual misconduct must be monitored for protection from retaliation for at least 90 days unless the allegations of misconduct are deemed unfounded. But the policy does not require that an investigation be completed within 90 days or any particular period, and it includes no requirement that a prisoner be notified if his allegations are found unsubstantiated.
>
> The Court cannot discern from this policy how a prisoner is to exhaust a claim through the PREA process, so Henry should be excused from the exhaustion requirement, and summary judgment of his retaliation claim should be denied.

*Henry v. Mihm*, No. 22-12830, 2024 WL 735385, at *5-6 (E.D. Mich. Jan. 26, 2024) (emphasis in original) (internal citations omitted) (footnote added); *see also Haines v. Miniard*, No. 22-10717, 2023 WL 3559608, at *3 (E.D. Mich. Apr. 24, 2023) (noting that the court could not discern "how a prisoner is to exhaust a claim through the PREA process" and asking how the plaintiff "would know when any investigation would be complete?"); *Taylor v. Purdom*, No. 22-10178, 2023 WL 3931507, at *5 (E.D. Mich. Mar.

[6] Here, Moon asserts – both in her complaint and her response brief – that between the time she wrote her July 21, 2025 letter to SRF's Grievance Coordinator and drafted her August 6, 2025 federal court complaint, she had received no indication that any action was being taken with respect to her PREA complaint. (ECF No. 1, PageID.12; ECF No. 33, PageID.175). Specifically, Moon claims that although PREA investigations are conducted promptly when a complaint is directed against a *fellow prisoner*, she had heard nothing following the return of her grievance on July 18, 2025. (*Id.*). Defendants presented neither evidence nor argument to the contrary.

30, 2023) (finding that the defendants had failed to show that the [PREA Policy] or an communication to the plaintiff "would permit an ordinary prisoner to discern how to exhaust his PREA claims" and, therefore, excusing the plaintiff from any exhaustion requirement with respect to said claims), *report and recommendation adopted in part and rejected in part on other grounds*, 673 F. Supp. 3d 872, 876 (E.D. Mich. 2023).

Defendants cite one case for the proposition that "[t]his Court recently granted summary judgment for failure to exhaust under a timeline essentially identical to this one, explaining: … 'Plaintiff filed this lawsuit within approximately a week of filing his Step I grievance, his grievance was still pending at the time he filed the complaint. Pending grievances cannot serve to exhaust administrative remedies.'" (ECF No. 28, PageID.109) (quoting *Handsome v. Sexton*, No. 24-10948, 2025 WL 825079, at *3 (E.D. Mich. Jan. 28, 2025)). However, *Handsome* is distinguishable, as it did not involve a PREA complaint; rather, it involved a grievance filed – and processed – under the General Grievance Policy, which, as noted above, imposes specific deadlines on both prisoners and the MDOC. As noted above, however, the PREA Policy is different in this regard.

Thus, for the foregoing reasons, the Court concludes that questions exist as to whether exhaustion is required under the PREA Policy, how a prisoner properly exhausts a PREA complaint, and the timeline within which she might be required to do so. Thus, Defendants' exhaustion defense is not "apparent from [Moon's] pleadings," as they assert (ECF No. 36, PageID.196), and their motion to dismiss should be denied.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion

to Dismiss **(ECF No. 28)** be **DENIED**.

Dated: August 4, 2026
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of

record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 4, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager